Raymond SMITH, Petitioner,

v.

Richard IVES, Respondent.

Case No. 3:17–cv–00076–SI

United States District Court, D. Oregon.

Signed 07/31/2017

---

Raymond Smith, 20827–112, FCI–Sheridan, P.O. Box 5000, Sheridan, Oregon 97378, Petitioner, Pro Se

Billy J. Williams, United States Attorney, Jared D. Hager, Assistant United States Attorney, 1000 SW Third Avenue, Suite 600, Portland, OR 97204–2902, Attorneys for Respondent

## OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2241 challenging the legality of his June 12, 2015 disciplinary hearing. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is granted.

### BACKGROUND

Petitioner is currently serving a 223–month sentence within the Bureau of Prisons ("BOP") for Conspiracy to Distribute and Attempt to Possess with Intent to Distribute a Controlled Substance. In the early months of 2015, prison officials suspected that petitioner might be attempting to smuggle narcotics into the facility. As a result, they began to actively monitor his telephone calls and email correspondence.

On April 14, 2015, BOP officials completed an investigation into petitioner's activities, finding that he was attempting to have his daughter send him a synthetic cannabis product known as "Spice" or "K2" by saturating letters with the sub-

stance. Consequently, authorities issued an incident report that same day charging him with a violation of Code 199A—Attempted Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution (most like code section 111A—Attempting to Introduce Drugs). Declaration of Jill Rosiles, pp. 2–3.

The BOP delivered a copy of the incident report to petitioner on April 15, 2015. Rosiles Declaration, Att. 2, p. 2. The Disciplinary Hearings Officer ("DHO") assigned to petitioner's case, Jill Rosiles, was dissatisfied with the report, and asked that it be rewritten to provide more specificity so as to allow petitioner a better opportunity to prepare a defense. Rosiles Declaration, pp. 3–4. As a result, on May 12, 2015, the BOP provided petitioner with a second incident report outlining the charges against him in greater detail. Rosiles Declaration, Att. 2, p. 1.

On June 12, 2015, petitioner appeared at his disciplinary hearing with the assistance of a staff representative. Petitioner requested witnesses, but none appeared because the DHO and petitioner's staff representative did not believe the witnesses had any relevant information to offer. Rosiles Declaration, Att. 3, p. 1.

The evidence against petitioner consisted of a variety of his communications with his daughter. The exchanges were via email and telephone, and appeared deliberately cryptic in nature as one example from the DHO's report reveals:

> On February 17, 2015, you emailed your daughter and asked "What happened with the project?" She responded and stated "I told you that me and [J] went and it wasn't clear, it was color and it was really expensive for a little small one. So he didn't think that it was worth it based off of what he seen. He told me I wouldn't be able to use that." On February 21, 2015, you responded to your daughter and stated "I love you but business is separate from everything else! ! If that thing was right, I could have got from $1500 to two racks for it so all the other shit you talking about don't mean nothing!!" You sent her a second response on February 21, 2015, [ ] stating "I am going to have [M] call you and get that information from you. You are very busy. Just get that letter done! You don't see what I am trying to do; I get tired of asking my mother for money to do things and that is why I need me a female helping me! I think I can get [M] to help me ... you are too busy moo! You are doing good and you don't need to get exposed to fast money ... you're a good girl like your mom!" Your daughter responded stating "I don't want you to find anyone else because I want to do this! And who else could you trust other than me ... you're telling me that I'm wasting time but it hasn't even been a month! And the reason why it has been taking so long is because I can't find the other thing! Even [RY] said she couldn't find it neither. But dad, I promise before I go back to work on Thursday I'm gonna have two of them ready. You just have to give me the information and everything is gonna be ready to go. The Thing That [RD] likes! So yeah, don't worry, I'm gonna get these and see if [J] was wrong about it." She also stated "But like I said ... I'm gonna have two of them done now that I brought up that stuff that [RD] likes might work. I'm gonna let you know how much that brand cost a pop and if it's ridiculous, like $50 for each, then that's up to you if you want to keep using that? Otherwise we gotta get the other thing but I just don't know where to find it."

Rosiles Declaration, p. 3.

Petitioner initially indicated to BOP personnel he was trying to help his daughter

with a science project, and later claimed that he was attempting to help her start a credit management business. *Id* at 4. He also asserted that he did not recall what he was talking about when he told his daughter he could have received "$1500 to two racks" for the product. *Id.* Instead, he argued that his conduct did not match the elements of the charged offense, and that the BOP used only portions of his conversations that lacked proper context. He claims that although he adamantly requested review of the entire transcripts of his conversations to establish his innocence, the DHO denied his request.

The DHO found petitioner guilty of the charged offense based upon the following:

The written statement of SIS Technician Ramirez, dated May 12, 2015, stating an investigation was completed on April 14, 2015, regarding the allegation you attempted to introduce drugs into the institution. On February 15, Lieutenant Meredith monitored a telephone call you placed to a female in which you stated "it has to be dark, and it needs to be in liquid form.["] You send and received numerous emails discussing the introduction of liquid K2 which were referenced specifically in Section 11 of the incident report and will be referenced in detail later in this report. On March 7, 2015, you placed a call to your daughter during which she stated to you "I just feel like you're doing good right now, like you got your certificate and stuff, like you're in a good position right now, and I don't think you should jeopardize that." You responded to her stating "I know what I'm doing, see ya'll not looking at the situation like I'm looking at it. I need all I can get right now. Who is going to take care of me when I get out?" Additionally, the SIS department had been made aware of several methods in which inmates have arranged for liquid K2 to be introduced into institu-

tions and was specifically discussed in Section 11.

*Id* at 2. The DHO sanctioned petitioner with the loss of 41 days of good-time credit, 60 days in disciplinary segregation, and the loss of commissary privileges, visiting privileges, telephone privileges, and email privileges for one year.

Petitioner asserts that the DHO's decision violates his right to due process of law where: (1) his disciplinary hearing was not conducted within a reasonable time following the issuance of the first incident report; (2) the BOP detained him in segregated housing for an excessive period without any notification of the charges against him; (3) the DHO refused to allow him to review the transcripts of his conversations; and (4) prison officials failed to introduce sufficient evidence to find him culpable of the charged offense.

## DISCUSSION

■ An inmate subject to a prison disciplinary hearing is entitled to certain procedural protections: (1) written notice of the charges against him; (2) at least 24 hours between delivery of the written notice and his disciplinary hearing; (3) a written statement by a factfinder as to the evidence relied upon and the reasons for disciplinary action; and (4) an opportunity to call witnesses and present documentary evidence in his defense when allowing him to do so "will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 563–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

[2] Petitioner first contends that prison officials violated his right to due process when they did not: (1) afford him a timely disciplinary hearing; and (2) placed him in disciplinary segregation 84 days prior to his June 12, 2015 disciplinary hearing. *Wolff* provides only that an inmate must receive his incident report at

least 24 hours before his disciplinary hearing. It does not otherwise guarantee a particular time that a disciplinary hearing must take place. Although petitioner experienced a delay of approximately 60 days between the issuance of his first incident report and the date of his disciplinary hearing, this delay was for his own benefit as "the incident report was rewritten to provide more specific detail of the incident to aid [petitioner] in preparation of a defense." Rosiles Declaration, Att. 3, p. 2. Such a delay does not run afoul of petitioner's due process rights.

■ *Wolff* also does not forbid the placement of an inmate in segregated housing during the course of a disciplinary investigation, prior to the issuance of an incident report. Although placement in disciplinary segregation may implicate an inmate's liberty interest, it will only do so when physical restraints impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Eight-four days is not sufficient to give rise to a liberty interest. *See Frazier v. Coughlin*, 81 F.3d 313 (2nd Cir. 1996) (eleven months in disciplinary housing not sufficient to give inmate protected liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 654 (3rd Cir. 2002) (same as to seven months).

■ More troubling is petitioner's claim that the DHO refused to permit him access to evidence to mount a proper defense. He asserts that the DHO, as well as the BOP's investigators, relied only upon excerpts of his telephone calls and emails from the prison to find him guilty of the charged offense. He claims that he requested the full transcripts of his email

and telephone conversations to corroborate his version of events and demonstrate that the BOP had taken the excerpts out of context. He concludes that the DHO's refusal to allow him to access these records deprived him of due process.

It is not clear whether the BOP retained full transcripts of petitioner's telephone conversations and copies of his email correspondence. It is, however, evident from the record that BOP investigators were able to quote petitioner's conversations and correspondence verbatim, and the DHO was presumably able to confirm these representations. Rosiles Declaration, Atts. 1–3. Thus, in the absence of any contrary evidence from respondent, the court is left to assume that the records petitioner sought did, in fact, exist in the days leading up to his disciplinary hearing.

Where BOP investigative personnel had access had access to petitioner's telephone transcripts and emails, it appears petitioner's staff representative also was also privy to that information where respondent represents that petitioner "was provided a staff representative who had an opportunity to review all available evidence."[1] Response (#6), p. 5. Given the inclusive nature of this statement, the court is left to conclude that petitioner's staff representative had access to the full transcripts of petitioner's conversations and email correspondence that the BOP monitored during the investigative period. However, despite this access, it is apparent from petitioner's claim that the staff representative did not share the contents of this evidence with him. Respondent provides no reason why this did not occur.

Not only did the staff representative refuse to allow petitioner access to the contents of petitioner's own conversations,

---

1. Respondent does not attempt to establish the parameters of term "all available evidence" in the context of petitioner's case.

but there is no indication that the staff representative attempted to, or was even capable of putting petitioner's conversations into context so as to help petitioner mount an effective defense. Indeed, it is difficult to imagine how he could have cogently presented petitioner's argument to the DHO without reviewing the totality of the evidence with petitioner.

Where petitioner's staff representative did not share the full communication records with him, his only recourse was to obtain them through the DHO. Petitioner asserts that he adamantly requested the ability to review his conversations in their entirety, but the DHO refused. Respondent does not assert otherwise.

As noted above, an inmate's right to due process includes the right to present documentary evidence in his defense assuming it "will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S.Ct. 2963. The Government provides no explanation as to why the DHO declined to allow petitioner to review the documents to which he sought access. Nothing in the DHO's report mentions any rationale for the exclusion of petitioner's requested evidence.[2] Given that these records constituted the entirety of the foundational evidence against petitioner, and absent a permissible reason from the DHO as to why petitioner was not able to view and present them in his own defense, the court is left to conclude that the disciplinary hearing violated petitioner's right to due process.

 Generally, a habeas corpus petitioner who seeks to establish a due process violation must show that he suffered prejudice as a result of the deprivation he alleges. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). It is impossible for petitioner to

make such a showing where: (1) prison officials refuse to allow him access to the records he claims could have exonerated him; and (2) the Government has not provided these documents to the court for its review. Accordingly, where petitioner has shown that he was wrongfully denied access to his transcripts so as to mount a defense with documentary evidence, and where that denial precludes him from demonstrating prejudice, the court concludes that petitioner has made a sufficient showing to warrant a new disciplinary hearing.

Because the evidence was not fully developed at petitioner's June 12, 2015 disciplinary hearing, the court declines to address whether there was "some evidence" to support petitioner's conviction under *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

## CONCLUSION

The Petition for Writ of Habeas Corpus (#1) is granted. If the BOP does not hold second disciplinary hearing within 60 days of the date of this Order which cures the due process violation identified above, respondent shall expunge petitioner's conviction for the Code 111A charge, restore his 41 days of good-time credit, and relieve him from any other sanctions that may stem from that conviction.

IT IS SO ORDERED.

---

**2.** There could be a perfectly valid explanation supporting the denial of the telephonic and email records that would satisfy due process,

but the Government has not provided any such explanation.